IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

PEARLIE MAE NANCE
DAVIS ROBINSON                                                                                    PLAINTIFF

vs.                                          No. 3:04cv00138-HLJ

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                          DEFENDANT

## MEMORANDUM AND OPINION

Plaintiff, Pearlie Mae Robinson, appeals the final decision of the Commissioner denying her claim for Supplemental Security Income (SSI). The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

Plaintiff protectively applied for SSI on November 17, 1999[1], alleging an inability to

---

[1] Plaintiff previously filed applications for DIB and SSI on January 9, 1995 and March 7, 1996 (Tr. 11, 376). Plaintiff also previously filed SSI applications on July 23, 1996, April 1, 1997, and January 22, 1999 (Tr. 76-87). These applications were denied, and not appealed. Therefore, the Court has no jurisdiction to review those actions of the Commissioner.

work since January 7, 1997[2] (Tr. 11, 88-90).  In her Disability Reports, Plaintiff stated that she was disabled due to back pain (Tr. 174, 201); in addition, at her second hearing, she also complained of headaches, vision loss and hearing loss (Tr. 529-531).  After a hearing, Administrative Law Judge (ALJ) Larry Creson issued a decision denying benefits (Tr. 11-17).  Plaintiff appealed and this Court remanded the case for a new decision (Tr. 375-79).  Plaintiff filed a subsequent application for SSI on April 22, 2002, which was consolidated with her prior claim (Tr. 416-420, 380).  A new hearing was held before ALJ Hubert Graves (Tr. 516-538).  Plaintiff was 45 years old at the time of the hearing, and has completed the tenth grade (Tr. 519).  Plaintiff has past work experience as a certified nurse assistant (CNA) and as a janitor (Tr. 521).

The ALJ analyzed Plaintiff's claim according to the familiar five-step sequential analysis.  20 CFR § 416.920.  In a decision dated February 21, 2004, he found: (1) she had not engaged in substantial gainful activity since her alleged onset of disability; (2) her degenerative disc disease at the L5-S1 level was a severe impairment; (3) her impairment did not meet the listings; (4) her subjective allegations were not fully credible; (5) she retained the residual functional capacity (RFC) to perform the full range of light work:  to lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently, stand and/or walk 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day; (6) she had no past relevant work; and (7) based on an exertional capacity for light work, her age, education, and work experience, Medical-Vocational Rule 202.17 directed a finding of not disabled (Tr. 366-367).  Thus, the ALJ concluded that Plaintiff was not

---

[2] Though Plaintiff claims that she has been unable to work since January 7, 1997, her earnings record shows that she worked, earning $3000 in 2000, $3715 in 2001, and $4233 in 2002 (Tr. 420).  Moreover, she testified that she quit only due to lack of transportation, rather than due to her disability. (Tr. 532-535).

disabled.

Plaintiff argues: (1) the ALJ erred by relying on the Medical-Vocational Guidelines (Grids) when Plaintiff suffered from nonexertional impairments (*Pltf.'s App. Br.* at 15-19); (2) the Commissioner did not consider all of the evidence presented (*Pltf.'s App. Br.* at 19-20); (3) the ALJ did not properly evaluate Plaintiff's credibility (*Pltf.'s App. Br.* at 21-24); and (4) the ALJ's RFC findings are not supported by substantial evidence (*Pltf.'s App. Br.* at 24-25).

First, Plaintiff argues that the ALJ erred by relying on the Grids because Plaintiff suffered from nonexertional impairments. Ordinarily, the ALJ may use the Grids to find that a claimant is not disabled if the claimant does not have nonexertional impairments, or if the nonexertional impairment does not diminish the claimant's RFC to perform the full range of activities listed in the Grids. *Holz v. Apfel,* 191 F.3d 945 (8th Cir. 1999). But, if the nonexertional impairments significantly affect the RFC, the Grids are not controlling, and a vocational expert is required. *Id.* After a review of the record, the Court finds that substantial evidence supports the ALJ finding that Plaintiff does not suffer from nonexertional impairments which would significantly affect her ability to perform a full range of light work.

Plaintiff alleges that she suffered from the nonexertional impairments of borderline intellectual functioning, post traumatic stress disorder (PTSD), major depressive disorder, hearing problems, and pain. However, Plaintiff was not diagnosed with borderline intellectual functioning. In 1996, during a consultative psychological exam, Richard Maddock, Ph.D., *estimated* her IQ to be 70-79, but noted that she may not have been truthful on the Mental Status Test (Tr. 268). At that time Dr. Maddock also diagnosed PTSD and recurrent moderate major depressive disorder (Tr. 269). The Court notes these findings and diagnoses do not fall within

the relevant time period, which began with the Protective Filing of Plaintiff's SSI Application on November 17, 1999.  Moreover, there are no current diagnoses of PTSD or depression.   Plaintiff testified that she does have crying spells; however, when asked if she was emotionally stable, she responded, "I'd act pretty reasonable" (Tr. 528-29).  In addition, Plaintiff did not initially allege any mental problems (Tr. 198).  *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to assert depression as a basis for disability is significant, even if the evidence of depression is later developed).  Troy Cole, Ph.D., evaluated Plaintiff's mental status in August 2003, and noted that Plaintiff was applying for benefits on the basis of an unspecified mental allegation, and that, at that time, she did not take any medication, nor did she see a counselor or psychiatrist (Tr. 488-89, 491).  Dr. Cole diagnosed Malingering; back pain and spider bite by history; problems with health and occupation; and a GAF of 65.  *Id.*   While Dr. Cole stated that "she appeared to be of limited intelligence, possibly in the borderline range," he noted that "testing was not completed to substantiate this" (Tr. 490), and also said that her level of cooperation was minimal, and that her mental status exam suggested Malingering (Tr. 488).  Nevertheless, Dr. Cole concluded that her cognitive/communication functioning, social interaction, behavioral functioning, and concentration, persistence, and pace were not limited (Tr. 491).   Thus, there is no merit to Plaintiff's argument that she suffers from mental limitations that significantly reduce her ability to perform the full range of light work.

Plaintiff also argues that her pain and hearing loss are nonexertional limitations that substantially reduce her ability to perform the full range of light work.  Plaintiff's hearing loss has never been medically established; moreover, a July 2002 Physical Examination found no hearing loss (Tr. 471).  *Marolf v. Sullivan*, 981 F.2d 976, 978 (8th Cir. 1992) (proof of a disabling

impairment must be supported by at least some medical evidence).  Finally, during the hearing, Plaintiff admitted that a hearing aid would probably cure her problem (Tr. 530-31).  Thus, Plaintiff's argument is without merit.

As for Plaintiff's pain, the ALJ did not find that Plaintiff had no pain, but found that Plaintiff retained the capacity to perform light work without her pain significantly diminishing that ability.  Substantial evidence supports this finding.  Most notably, Plaintiff's MRIs of her lumbar spine showed only minimal early aging or degenerative changes to the L5-S1 disc (Tr. 303, 505, 513).  *See Baker v. Sec. of HHS*, 955 F.2d 238, 239 (8th Cir. 1990) (the absence of medical evidence to support a plaintiff's complaints of severe pain and limitation is a factor to consider when assessing a plaintiff's credibility).  To support her argument, Plaintiff points to Dr. James Alexander's, December 1999 opinion that Plaintiff is "totally disabled" due to "very severe degenerative disc problems in her lower back" that causes "severe pain" when she "walks, sits, or stands" (Tr. 339, see also 341 and 454).  However, this Court in its *Memorandum and Order*, dated March 28, 2003, has already found that Dr. Alexander's opinion was conclusory and inconsistent with the record (Tr. 378).  Plaintiff also points to neurologist Rodney Oligner, M.D.'s opinion that Plaintiff has pain (Tr. 328).  Dr. Olinger found "a lot of tenderness over the lower lumbar spinous processes and some over the SI joints," "some tightness in the muscles," but "no radicular symptoms" and her "motor, sensory and reflex examinations [were] normal" (Tr. 328). While Dr. Olinger found that Plaintiff had some pain, he also found that her MRI "revealed only a slight bulge and degeneration of the L5 disk...[which was not] a surgical problem" (Tr. 328).  *See Black v. Apfel,* 143 F.3d 383, 396 (8th Cir. 1998) (such a conservative course of treatment is inconsistent with disabling pain and limitation).  Dr. Olinger also noted in

December 1999, that Plaintiff wished to go back to work as a CNA; he told her she could do so "if the blocking seems to help [and] she could get into a set of exercises and wear a small lumbar support when she does go back." (Tr. 327). Similarly, Dr. Olinger wrote that he thought she was capable of employment, though he did not see her returning to her job as a CNA, as that job required lifting, bending, and twisting, which she had not done in a long time, and [for which,] she would need to do her exercises diligently (Tr. 298). Likewise, Dr. Marian Barr and the consultative examiner[3] observed in July and August 2002, respectively, that Plaintiff demonstrated normal sensory and motor functioning, exhibited a full range of motion in her neck, spine and joints, showed no muscle weakness or atrophy and walked with a normal gait (Tr. 478, 472). Finally, Dr. Mauel Carro, the examining-consultative neurologist, found on August 1, 2003, that although Plaintiff had degenerative disc disease with functional overlay, her ability to lift, carry, sit, stand, walk, and perform manipulative and postural activities were not affected (Tr. 480-83). The findings of Drs. Olinger, Barr, the consultative examiner, and Carro not only contradict Dr. Alexander's opinion that Plaintiff is disabled, but also contradict Plaintiff's argument that she suffers from nonexertional limitations that significantly reduce her ability to perform the full range of light work. These findings also provide substantial evidence to support the ALJ's RFC determination.

      Plaintiff also argues that there is not substantial evidence to support the ALJ's determination that her subjective complaints were not fully credible. Contrary to Plaintiff's argument, the ALJ properly evaluated Plaintiff's subjective complaints in accordance with *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). In *Polaski,* the Court stated that when

---

[3] The physician's signature is illegible.

assessing credibility, an ALJ is required to examine all of the evidence and the claimant's prior work record, as well as the following factors: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions. *Id.* The ALJ found that the objective medical evidence, the low level and infrequent nature of medical treatment, and the Plaintiff's activities of daily living were factors that were inconsistent with her complaints of disabling pain and mental limitations (Tr. 364). If an ALJ discredits a claimant's credibility and gives a good reason for doing so, the Court will defer to his judgment, even if every factor is not discussed in depth. *Brown v. Chater,* 87 F.3d 963, 966 (8th Cir. 1996). In conclusion, a review of the record provides substantial evidence to support the ALJ's finding that Plaintiff's subjective complaints were not fully credible.

      Plaintiff has advanced other arguments, which the Court has carefully considered, and found to be without merit. It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). There is ample support in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also, Robertson v. Sullivan*, 925 F.2d 1124, 1126-27 (8th Cir. 1991). The Commissioner's decision is not based on legal error.

IT IS THEREFORE ORDERED THAT the Commissioner's decision is affirmed and the Plaintiff's claim is dismissed with prejudice.

IT IS SO ORDERED.

DATED this 31st day of August, 2005.

*Henry L. Jones, Jr.*
UNITED STATES MAGISTRATE JUDGE